### J. C. Durick Insurance v. Peter Andrus

[424 A.2d 249]

No. 3-80

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 5, 1980

*Richard F. Sullivan,* Rutland, for Plaintiff.

*Peter Andrus,* pro se, Jamaica, Defendant.

**Daley, J.** This is an appeal from a judgment awarding premiums allegedly due on an insurance contract sold by the plaintiff to the defendant. The transcript of the proceedings below establishes as uncontroverted the following facts. The defendant's apartment building was insured against fire loss under a policy sold by the plaintiff which terminated on March 28, 1977. This policy had no provisions for automatic renewal. Some two months before the expiration date of the policy, the plaintiff wrote to the defendant recommending that he increase his coverage from the then-existing $40,000 amount to an amount of $48,000. The defendant replied, by phone, that he wished to insure his building only up to the $24,000 outstanding balance on his mortgage. In the course of this conversation, the agent stated that his company would only insure the building if the coverage sought were 80% of the fair market value of the property. The defendant replied that he would be forced to obtain insurance elsewhere if the $24,000 coverage could not be arranged.

Shortly before the expiration date of the policy, the plaintiff sent the defendant a new policy with a face amount of $48,000. This policy contained the provision that the defendant could "cancel" the new policy by returning either the policy itself or the lost policy receipt. Absent that, the policy would be automatically accepted through the inaction of the defendant. The defendant did not respond and was sued for

nonpayment of premiums which had fallen due under the purported insurance contract. We find on these facts that, as a matter of law, no contract was created. The facts also fail to establish grounds for a quasi-contractual recovery and, therefore, we reverse.

"To constitute a contract . . . there must be a meeting of minds of the parties; an offer by one . . . and an acceptance . . . by the other." *Manley Bros., Inc.* v. *Bush,* 106 Vt. 57, 62, 169 A. 782, 783 (1933). None of the communications amounted to an acceptance. Offers and counteroffers were made and rejected, but never was there a meeting of the minds. Acceptance on terms differing from those offered is a counteroffer and is not binding until accepted in its own right. "[A]n acceptance which varies from the offer will not conclude a contract." *Ackerman* v. *Carpenter,* 113 Vt. 77, 81, 29 A.2d 922, 924 (1943).

The offeror cannot force the offeree to speak or be bound by his silence. "[S]ilence gives consent . . . only where there is a duty to speak." *Hendrickson* v. *International Harvester Company of America,* 100 Vt. 161, 169, 135 A. 702, 705 (1927). We find no such duty here. The prior contract was a separate and independent agreement which came to an end by its own terms on March 28, 1977. It contained no automatic renewal clause and failed to bind the parties in any way after that date. The past dealings of the parties establish no course of conduct, and the record is silent as to custom within the industry, or the defendant's familiarity therewith. We conclude that there was no acceptance, hence no contract and no premiums due.

Another possible justification for the plaintiff's judgment in the trial court would be that of a contract implied in law. "[W]henever valuable service is rendered with the knowledge and consent of the recipient, an obligation to pay therefor will be presumed in the absence of a showing to the contrary." *Ackerman* v. *Carpenter, supra,* 113 Vt. at 84, 29 A.2d at 926. For lack of acceptance, the second insurance policy was never in effect. Thus, the rendition of a valuable service, a predicate to any action on an implied contract, is lacking. Furthermore, the record contains no evidence that the

defendant ever acted in a manner inconsistent with the firm position taken in his phone conversation with the plaintiff.

On the basis of the record before us, we can find no grounds to support a judgment for the plaintiff.

*Judgment reversed.*