### Vincent R. Benya v. Stevens and Thompson Paper Company, Inc.

[468 A.2d 929]

No. 82-154

Present: Billings, C.J., Hill and Peck, JJ., Barney, C.J. (Ret.) and Larrow, J. (Ret.), Specially Assigned

Opinion Filed November 1, 1983

*Georgiana O. Miranda, McKee, Giuliani & Cleveland,* Montpelier, for Plaintiff-Appellee.

*Salmon and Nostrand,* Bellows Falls, and *Jerome R. Balka* (Of Counsel), Philadelphia, Pennsylvania, for Defendant-Appellant.

**Billings, C.J.** Defendant appeals, after trial by court, from a judgment for plaintiff on a breach of contract complaint involving the sale of some five thousand acres of timber land located in the towns of Windham, Townshend and Grafton, Vermont. The court awarded plaintiff actual damages of $300,000 and punitive damages of $50,000 plus interest. Defendant alleges several claims of error, but only two are relevant to our disposition of this appeal. Defendant claims (1) that there was no binding purchase and sales agreement between the parties, and (2) that the Statute of Frauds controls. 12 V.S.A. § 181(5).

In September 1979, defendant Stevens and Thompson Paper

Co. (S & T), a wholly owned subsidiary of a Texas corporation, entered into an exclusive listing agreement with Patricia Standen and Associates (Standen), a Vermont real estate brokerage partnership, for the sale of 5,243 acres of timber land. Also during this time, Landvest, Inc. (Landvest), a Massachusetts corporation engaged in the sale and management of real estate in Vermont and elsewhere, communicated with the plaintiff, a United States citizen residing in Great Britain, concerning the availability of S & T's land.[*]

On September 24, 1979, at plaintiff's request, Landvest prepared a purchase and sales agreement for the purchase of the woodlot on the following terms:

| | |
|---|---|
| Total Purchase Price: | $605,366.50 ($115.50 per acre) |
| Deposit: | $5,000 |
| Cash at Closing: | $146,391.62 |
| First mortgage to be held by seller (9% for 10 years, annual payments commencing from date of closing): | $454,174.88 |
| Closing: | 60 days from date of agreement |
| Deed: | Warranty |

Plaintiff executed this agreement, which was then forwarded to defendant. Defendant's attorney made a number of interlined additions and modifications to the purchase and sales agreement as follows:

| | |
|---|---|
| Total Purchase Price: | $605,366.50 ($115.50 per acre adjusted if more or less than +5%) |
| Deposit: | $10,000 |
| Cash at Closing: | $141,391.62 |

---

[*] Although it was a matter of contention at trial, Landvest believed it had a co-brokerage agreement with Standen.

| | |
|---|---|
| First mortgage to be held by seller (10% for 10 years, quarterly payments commencing January 1, 1980): | |
| Closing: | 60 days from date of agreement |
| Deed: | Special Warranty |

Buyer has 14 days to object to title defect.

Defendant's vice-president then initialed each change and signed the document. The document was then mailed back to Landvest, who discussed the changes made by defendant with the plaintiff.

Plaintiff disagreed with the proposed amount of deposit and wanted clarification on some of the other modifications made by defendant. After consulting by telephone with defendant's attorney, a new purchase and sales agreement was prepared by Landvest. The terms of this document differed from the previous two versions in a number of areas, most significantly in reducing the amount of deposit back to $5,000 and postponing the due date of the first quarterly payment for one year. Plaintiff executed this document on October 19, 1979, and it was received by defendant for approval in early November 1979. Defendant never executed this document or responded concerning its terms, as the woodlot had been sold to another prospective purchaser on November 7, 1979.

The trial court found that the September 24, 1979, purchase and sales agreement constituted a binding contract for the sale of the woodlot between plaintiff and defendant, as both parties had signed it. The court concluded that the changes made by defendant to plaintiff's purchase and sales agreement were minor since the purchase price, closing date and deposit were substantially the same, and therefore did not constitute a counteroffer. Citing *Dickson* v. *McMahan*, 140 Vt. 23, 433 A.2d 310 (1981), the court found that the changes involving mortgage details were separate and distinct from the offer to purchase and did not, therefore, affect the existence of a contract between the parties.

The law relative to contract formation has long been

well settled in Vermont and elsewhere. For an acceptance of an offer to be valid, it must substantially comply with the terms of the offer. *Hill* v. *Bell,* 111 Vt. 131, 134, 11 A.2d 211, 213 (1940). An acceptance that modifies or includes new terms is not an acceptance of the original offer; it is a counteroffer by the offeree that must be accepted or rejected by the original offeror. *Okemo Mountain, Inc.* v. *Okemo Trailside Condominiums, Inc.,* 139 Vt. 433, 435, 431 A.2d 457, 459 (1981); *J. C. Durick Insurance* v. *Andrus,* 139 Vt. 150, 152, 424 A.2d 249, 250 (1980); *Hill* v. *Bell, supra,* 111 Vt. at 135, 11 A.2d at 213. The offeror's acceptance of the offeree's counteroffer may be accomplished either expressly or by conduct. *Okemo Mountain, Inc.* v. *Okemo Trailside Condominiums, Inc., supra,* 139 Vt. at 435, 431 A.2d at 459.

On the record before us it is clear that the September 24th purchase and sales agreement was an offer from plaintiff to defendant that defendant never accepted. Instead, defendant significantly altered the terms of plaintiff's offer: the amount of the deposit was increased from $5,000 to $10,000; cash at closing was reduced by $5,000; the rate of interest was increased from 9% to 10%; payments were to be made quarterly rather than annually; the type of deed was changed from a warranty to a special warranty deed. These changes were not, as characterized by the trial court, minor and therefore of no effect on plaintiff's offer. Taken together, they constitute defendant's proposal for a new deal, or, more precisely, a counteroffer. See Restatement (Second) Contracts § 39 (1981). Also clear from the record is that plaintiff never accepted, either expressly or otherwise, defendant's counteroffer. After plaintiff and Landvest discussed defendant's counteroffer, the decision was made to draft a third proposal, which in turn altered the deposit and time of payment terms of defendant's counteroffer. Defendant never signed or in any other way expressed its assent to this proposal. Additionally, the conduct of the parties demonstrates their understanding that agreement had not yet been reached.

The court's reliance on *Dickson* v. *McMahan, supra,* is misplaced. In *Dickson,* after protracted negotiations concerning the sale of real estate, plaintiffs, who were obtaining financing for the purchase, sent defendant a proposed purchase and

sales agreement. *Dickson* v. *McMahan, supra,* 140 Vt. at 24, 433 A.2d at 311. The defendant returned the agreement to plaintiffs, accompanied by a letter explaining that he was returning it because his co-tenant's name had been misspelled. *Id.* He also indicated a desire to negotiate with the plaintiffs on spreading, for tax purposes, the timing of their payment to him. *Id.* This Court held that defendant, by his letter, had accepted the terms of plaintiffs' agreement. The fact that the time of payment remained unsettled was inconsequential since it "did not deal with the essentials of the sale of the property," inasmuch as plaintiffs were prepared to pay in full. *Id.* at 26, 433 A.2d at 312. In the case at bar, financing was clearly an integral part of the contract since defendant was expected to finance three-quarters of the purchase price. Plaintiff and defendant never reached a meeting of the minds on all essential details of the proposed sale. *J. C. Durick Insurance* v. *Andrus, supra,* 139 Vt. at 152, 424 A.2d at 250. The evidence does not support the court's finding that plaintiff's September 24th purchase and sales agreement was ever accepted by the defendant.

The trial court also found that, even if the September 24th agreement was not binding on the parties, the final agreement, executed by plaintiff on October 19, did become the contract of the parties because it was drafted with the consent and knowledge, as to its terms, of defendant's attorney. See *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc.,* 123 Vt. 130, 183 A.2d 230 (1962). There was testimony at trial that defendant's vice-president, when informed by Landvest over the telephone that plaintiff had signed the October 19th purchase and sales agreement, had responded "We have a deal." As already noted, defendant never executed the October 19th document.

■■■■ Defendant contends that the Statute of Frauds, 12 V.S.A. § 181(5), which was affirmatively pled in accordance with V.R.C.P. 8(c), is applicable. The Statute of Frauds requires that for a contract for the sale of lands to be enforceable, the contract or some memorandum thereof must be in writing and signed by the party to be charged. 12 V.S.A. § 181(5). It is also recognized that a written offer that is orally accepted may constitute a sufficient memorandum of the contract provided the offeror is the party to be charged. *First Na-*

*tional Bank* v. *Laperle,* 117 Vt. 144, 148–49, 86 A.2d 635, 638 (1952). Here, the party to be charged is the defendant, who never signed the proposed October 19 document, as required by 12 V.S.A. § 181(5), and who was not the offeror of the October 19 purchase and sales agreement. *First National Bank* v. *Laperle, supra.* Although defendant was consulted by Landvest prior to the drafting of the October 19th document, the evidence does not establish that the October 19th purchase and sales agreement contained terms that had "been fully agreed upon by both parties." *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc., supra,* 123 Vt. at 134, 183 A.2d at 234. In fact, as previously noted, the terms concerning deposit and time of repayment in the October 19th document differed materially from those proposed by defendant in its counteroffer.

*Reversed. Judgment for plaintiff vacated, judgment for the defendant entered.*