WILLIFORD v. ATLANTIC AMERICAN PROPERTIES, INC.

[129 N.C. App. 409 (1998)]

C. TODD WILLIFORD, AND WIFE, RITA C. WILLIFORD, PLAINTIFFS v. ATLANTIC
AMERICAN PROPERTIES, INC., A CORPORATION, DEFENDANT

No. COA97-724

(Filed 5 May 1998)

**Vendor and Purchaser § 4 (NCI4th)— real estate sales contract—mutuality of agreement—questions of fact**

The trial court erred by granting summary judgment for defendant in an action arising from a real estate sales agreement where there was an issue as to whether a contract was formed before certain restrictive covenants were imposed. Questions of fact remain as to whether the parties agreed to the same thing in the same sense and as to all the terms.

Judge GREENE dissenting.

Appeal by plaintiffs from judgment entered 27 March 1997 by Judge J. Bruce Morton in Cabarrus County District Court. Heard in the Court of Appeals 17 February 1998.

*Hartsell Hartsell Spainhour & Shelley, P.A., by W. Erwin Spainhour, for plaintiffs-appellants.*

*Rayburn, Moon & Smith, P.A., by James C. Smith and James B. Gatehouse, for defendant-appellee.*

WALKER, Judge.

Plaintiff, C. Todd Williford, is an attorney practicing law in Kannapolis, North Carolina, and his wife, Rita C. Williford, is a secretary in the law firm. Plaintiff's law firm has leased the building located at 209-211 South Main Street from defendant Atlantic American Properties, Inc. (Atlantic American) since 1986. Defendant owns approximately eighty percent of the real estate in Kannapolis, including most of the downtown area.

In 1995, plaintiffs began negotiating with defendant, through defendant's agent, Diane Moon (Moon), to purchase the lot located at 209-211 South Main Street, as well as the adjacent lot located at 213 South Main Street. As a result of these negotiations, an offer to purchase was prepared, signed and delivered by Moon to plaintiffs' law office on 28 June 1995. The terms of the offer to purchase were that plaintiffs offered to purchase, and defendant agreed to sell, the two

contiguous lots for a sum of $140,000.00. The offer to purchase listed the closing date as 1 August 1995 and stated the property was to be sold "as-is." Further, the standard provisions of the offer to purchase contained a merger clause which read:

> 17. ENTIRE AGREEMENT: . . . This contract contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed in writing. All changes, additions or deletions hereto must be in writing and signed by all parties. . . .

This offer to purchase was signed by plaintiffs and dated 28 June 1995, but there is a dispute between the parties as to whether it was actually signed by plaintiffs on that date.

After the offer to purchase had been delivered to plaintiffs, they expressed to Moon their desire for separate offers to purchase for each lot so that in the event the law firm which occupied 209-211 South Main Street was dissolved, the purchase price for the building could be readily ascertained. Accordingly, on 10 July 1995, Moon prepared and delivered to plaintiffs two separate offers to purchase. Thereafter, plaintiffs retained attorney Reginald Smith (Smith) to examine the title to the property and conduct the closing on the two lots.

On 12 July 1995, Smith informed his law partner, Walter Safrit (Safrit), whose wife, Lynn Safrit, was president of Atlantic American, that he was representing plaintiffs in connection with the anticipated sale of the two lots. Safrit advised Smith that defendant was in the process of preparing certain restrictive covenants (the covenants) designed to preserve the architectural integrity of the structures on each lot, and the closing on the lots could not occur until the covenants were accepted by plaintiffs. Plaintiffs assert this was the first time during the lengthy negotiation process they had been told about the covenants.

On 14 July 1995, Lynn Safrit telephoned Rita Williford to discuss the covenants. Rita Williford told Lynn Safrit that the 28 June 1995 offer to purchase had been signed by all parties and therefore was a binding contract. There is a dispute as to whether this was the first time defendant had been informed that plaintiffs had signed the 28 June 1995 offer to purchase.

On 21 July 1995, plaintiffs mailed defendant a letter, along with a $600.00 check for the earnest money and a signed copy of the offer to

purchase. In the letter, plaintiffs expressed their displeasure with the fact they had only recently learned about the covenants and they wanted to close on the two lots without the covenants and according to the terms of the 28 June 1995 offer to purchase.

On 26 July 1995, defendant faxed a copy of the covenants to plaintiffs and stated the covenants would be recorded on 31 July 1995, one day prior to the closing date specified in the offer to purchase.

Plaintiffs, faced with the prospect of either consenting to the proposed covenants or abandoning the real estate deal, filed this action on 31 July 1995, seeking specific performance of the 28 June 1995 offer to purchase and a preliminary injunction to prevent enforcement of the covenants. The trial court granted a temporary restraining order and scheduled a hearing on the motion for a preliminary injunction. At the hearing on 30 September 1995, the trial court granted plaintiff's motion for a preliminary injunction. Thereafter, both parties moved for summary judgment, and the trial court granted defendant's motion for summary judgment on 31 March 1997.

On appeal, plaintiffs contend the trial court erred by granting summary judgment for defendants because a genuine issue of material fact existed as to whether an agreement for the sale of the two lots was reached between the parties. In the alternative, plaintiffs contend they are entitled to summary judgment because no genuine issues of material fact existed as to whether such an agreement was reached.

Conversely, defendants argue since plaintiff did not return the signed 28 June 1995 offer to purchase to defendant, along with the $600.00 earnest money, until 21 July 1995, no contract was formed between the parties for the sale of the two lots.

At the outset, we first note that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Pressman v. UNC-Charlotte*, 78 N.C. App. 296, 300, 337 S.E.2d 644, 647 (1985), *disc. review allowed*, 315 N.C. 589, 341 S.E.2d 28 (1986). Further, summary judgment may be appropriate in an action seeking the specific performance of a real estate contract if

WILLIFORD v. ATLANTIC AMERICAN PROPERTIES, INC.

[129 N.C. App. 409 (1998)]

the requirements of a valid contract are met. *See Kidd v. Early*, 289 N.C. 343, 371-372, 222 S.E.2d 392, 411 (1976).

An offer to purchase real property remains an offer only until it is accepted by the offeree according to its terms. *Normile v. Miller and Segal v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985). After acceptance, it becomes specifically enforceable as a contract to convey if it is in writing and contains all the essential elements of a contract, *e.g.*, the names of the parties to the contract, the purchase price, and a description of the property to be sold. *See Kidd v. Early*, 23 N.C. App. 129, 135, 208 S.E.2d 511, 515, *cert. allowed*, 286 N.C. 335, 210 S.E.2d 57 (1974), *aff'd in part and rev'd in part*, 289 N.C. 343, 222 S.E.2d 392 (1976).

However, as our Supreme Court has noted, mutual assent is an additional requirement for the formation of a valid contract:

> It is axiomatic that a valid contract between two parties can only exist when the parties "assent to the same thing in the same sense, and their minds meet as to all terms." This assent, or meeting of the minds, requires an offer and acceptance in the exact terms and that the acceptance must be communicated to the offeror.

*Normile v. Miller and Segal v. Miller*, 313 N.C. at 103, 326 S.E.2d at 15 (citations omitted). Our Court recognized this principle when it held:

> "One of the essential elements of every contract is mutuality of agreement. There must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement."

*Builders, Inc. v. Bridgers*, 2 N.C. App. 662, 667, 163 S.E.2d 642, 645 (1968) (citation omitted).

Here, questions of fact remain as to whether the parties agreed to the same thing in the same sense and as to all the terms. Therefore, the trial court erred by granting summary judgment for defendant.

Reversed and remanded.

Judge GREENE dissents.

ESTATE OF WELLS v. TOMS

[129 N.C. App. 413 (1998)]

Judge TIMMONS-GOODSON concurs.

Judge GREENE dissenting.

I do not agree that a genuine issue of material fact is presented in this case. I would affirm summary judgment for the defendant.

"If an offer prescribes any conditions concerning the communication of its acceptance, the offeror is not bound unless they are conformed to." 17A Am. Jur. 2d *Contracts* § 97 (2d ed. 1991); 2 Richard Lord, *Williston on Contracts* § 6:12 (4th ed. 1991). In this case, the offer specifically conditioned acceptance upon the execution in writing by the plaintiffs and the delivery of the signed offer to the defendant along with $600.00.[1] Because the undisputed evidence reveals that the signed offer (signed by the plaintiffs) was not delivered to the defendant with a payment of $600.00 until 21 July 1995, after the defendant had revoked the offer, there exists no contract between these parties. 17A Am. Jur. 2d *Contracts* § 68 ("An acceptance after an effective revocation of the offer is ineffective."); *Normile v. Miller and Segal v. Miller,* 313 N.C. 98, 108-09, 326 S.E.2d 11, 18 (1985).

---

1. The written offer contains the following pertinent language:

    3. PURCHASE PRICE: The purchase price is $140,000.00 . . . and shall be paid as follows:

    (a) $600.00 in earnest money . . . with the delivery of this contract to be held in escrow by AAP, as agent, until the sale is closed, at which time it will be credited to Buyer, or until this contract is otherwise terminated . . . .

    . . . .

    9. COUNTERPARTS: This offer shall become a binding contract when signed by both Buyer and Seller.