Denver Prop. Partners, LLC v. Sisson, 2019 NCBC 22.

STATE OF NORTH CAROLINA

LINCOLN COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 725

DENVER PROPERTY PARTNERS,
LLC; and BAYPORT HOLDINGS,
INC. d/b/a DENVER DEFENSE
RANGE & FIREARMS,

              Plaintiffs,

v.

BRIAN P. SISSON; LAKE NORMAN
SPORTING ARMS AND RANGE,
INC. d/b/a THE RANGE AT LAKE
NORMAN, d/b/a THE RANGE AT
BALLANTYNE, d/b/a PINEVILLE
GUN SHOP; and THE RANGE AT
DENVER, INC.,

              Defendants.

**ORDER AND OPINION
ON DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1.     **THIS MATTER** is before the Court on Defendants' Motion for Partial Summary Judgment (the "Motion") filed on January 18, 2019.[1]  (ECF No. 30.) Defendants seek summary judgment in their favor pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)") on Plaintiffs' first claim for relief (breach of contract).  For the reasons stated herein, the Court **GRANTS** the Motion.

*Elliott Law Firm, PC, by Michael Elliott, for Plaintiffs.*

*Sisson Law Firm, PLLC, by Kevin M. Sisson, and The McIntosh Law Firm P.C., by Joel M. Bondurant, for Defendants.*

Robinson, Judge.

---

[1]The Court held a hearing on the Motion on March 28, 2019 at which all parties were represented by counsel.  The Motion has been fully briefed and is now ripe for resolution.

## I. INTRODUCTION

2. The Court does not make findings of fact when ruling on motions for summary judgment. *See In re Estate of Pope*, 192 N.C. App. 321, 329, 666 S.E.2d 140, 147 (2008) (citation omitted). The factual background contained herein, taken from the evidence submitted in support of and in opposition to the Motion, is intended solely to provide context for the Court's analysis and ruling.

3. This litigation arises out of failed negotiations between Plaintiffs Denver Property Partners, LLC and Bayport Holdings Inc. (collectively, "Plaintiffs"), and Defendants Brian P. Sisson ("Sisson") and The Range at Denver, Inc. ("TRD") for the purchase of real property and other assets used and owned by Plaintiffs to operate an indoor shooting range and firearms retail store, Denver Defense Range & Firearms ("DDRF"). As a part of those negotiations, on or about December 28, 2017, Plaintiffs and Sisson entered into a Management Agreement whereby Sisson agreed to manage DDRF. The parties understood that this agreement allowed Sisson to run DDRF while simultaneously engaging in due diligence efforts to determine whether he ultimately wanted to purchase the business. After several months of running DDRF, on or around May 15, 2018, Sisson advised Plaintiffs that he no longer was interested in purchasing the business or managing Plaintiffs' operations, and this litigation quickly ensued.

4. Plaintiffs' Complaint includes seven (7) separate causes of action addressing a number of alleged acts of misconduct related to Sisson's oversight of Plaintiffs' operations and his decision not to go through with the purchase of DDRF.

Defendants seek, by the Motion, dismissal with prejudice of only one of those seven claims: Plaintiffs' first claim for breach of contract of an alleged written Purchase of Business Agreement (the "PBA"), dated February 5, 2018. Plaintiffs contend that the PBA, if enforceable, would obligate TRD to pay $3.3 million for Plaintiffs' real property and business assets.

## II. LEGAL STANDARD

5. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "A genuine issue is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (quotation marks and citation omitted).

6. The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist . . . or by showing through discovery that the opposing party cannot produce evidence to support an essential element of [its] claim." *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835 (citations omitted).

7. "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least

establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784−85, 534 S.E.2d 660, 664 (2000). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835. However, the nonmovant

> may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant].

N.C. Gen. Stat. § 1A-1, Rule 56(e).

### III.  DISCUSSION

8.     The Motion is premised principally on the contention, supported by sworn affidavit testimony and other record evidence properly considered on a Rule 56 motion, that Plaintiffs and TRD, through its agent Sisson, never actually entered into the PBA for the sale of DDRF.

9.     Defendants' position relies upon the sworn deposition testimony of Joseph Vagnone ("Vagnone"), the broker retained by Plaintiffs to sell the business, as well as an e-mail chain between Sisson, Robert Watson ("Watson"), a representative for Plaintiffs, and Watson's attorney. The testimony and e-mail chain evidence the following relevant communications between the parties:

> a. At some point on February 5, 2018, Watson e-mailed Vagnone asking if he could get "the signed asset purchase agreement" from Sisson. (Pls.' Mem. L. Opp'n to Defs.' Mot. for Partial Summ. J. Ex. A, at 63:23−63:25, ECF No. 34 ["Vagnone Dep."].) Vagnone forwarded Watson's e-mail to

Sisson, and Sisson replied that he believed he had a copy of it, but that "[i]t would be at home. I will send it this evening." (Vagnone Dep. 64:2–64:12.)

b. That evening at 7:11 p.m., Sisson e-mailed Watson, stating: "[w]e do not have a purchase agreement in place. Attached is a draft, if it is good for you, sign and send back and i [sic] will then sign[.]" (*See* Defs.' Opp'n to Emergency Mot. Ex. A, at Ex. A, ECF No. 11 ["Sisson Aff."].) Sisson's e-mail was factually inaccurate in the sense that, while Sisson said Watson should sign and send the document back for him to sign, Sisson had already signed and dated the PBA before sending it to Watson. (*See* Reply Br. Supp. Emergency Mot. Ex. H, at 17:2–18:18, ECF No. 13 ["Sisson Dep."].)

c. The next day, February 6, 2018, at 8:50 a.m., Watson forwarded Sisson's e-mail to his attorney and asked for him to review the proposed terms of the PBA. (Sisson Aff. Ex. A.) Watson's attorney responded at 4:11 p.m. that same day, stating that the agreement was "fine as written with one change. Since this purports to be covering the land/building and the inventory, etc. the seller(s) need to be Bayport Holdings, Inc. and Denver Property Partners, LLC." (Sisson Aff. Ex. A.)

d. Watson then forwarded this e-mail from his attorney to Sisson at 4:46 p.m. on February 6, 2018, stating: "Brian, need to put in the effective date 12/31/17 along with the current date is fine for the agreement [sic].

My attorney says because there are 2 companies below that both need to be added unless you have a reason to keep it that way." (Sisson Aff. Ex. A.)

    e. Sisson responded to Watson's e-mail on February 6 at 5:19 p.m., attaching a Microsoft Word version of the PBA and indicating to Watson that he could "modify as needed[.]" (Sisson Aff. Ex. A.)

10.     The parties did not engage in further negotiations or exchange additional drafts of the PBA. (Sisson Aff. ¶ 2; Sisson Dep. 21:17−22:7.) The record is devoid of any evidence tending to indicate that Watson signed the PBA around February 2018 and sent it to Sisson or that Watson, or anyone else on behalf of Plaintiffs, advised Sisson that they had accepted the PBA as originally drafted. Nonetheless, Exhibit A to Plaintiffs' Complaint attaches a fully executed copy of the PBA, bearing both Watson's and Sisson's signatures. (Compl. Ex. A, at 17, ECF No. 3 ["PBA"].)

11.     Both the PBA Sisson sent to Watson on February 5, 2018 and the PBA attached to the Complaint name the seller to the contract as "Denver Defense Gun Range" (the "Seller") and "The Range at Denver Inc [sic]" as the purchaser (the "Purchaser"). (PBA 1.) Pursuant to the PBA, "the Seller agree[d] to sell [DDRF's] [a]ssets to the Purchaser and the Purchaser agree[d] to purchase the [a]ssets from the Seller." (PBA ¶ 2.) Seller's assets were defined as: "all equipment used in carrying on the Seller['s]" business; all inventory and packaging; all books, records, and files relevant to carrying on Seller's business; "title to registered or unregistered trade marks [sic] and trade names"; Seller's goodwill, including the business name;

and Seller's building and land." (PBA ¶ 1(a).)  The PBA set the closing date for the transaction as March 31, 2018 and set the purchase price at $3.3 million.  (PBA ¶¶ 3, 5.)

12.    Plaintiffs allege that Sisson and TRD breached the PBA by failing, without excuse, to purchase Plaintiffs' land and other assets for $3.3 million on or before the closing date set by the PBA.  (Compl. ¶¶ 26–27.)

13.    As an initial matter, with respect to Plaintiffs' claim for breach of the PBA against Sisson, although Sisson's signature appears on the document, Sisson was not a party to the PBA.  The PBA identifies "Denver Defense Gun Range" as Seller and TRD as Purchaser.  (PBA 1.)  The signature page of the PBA further demonstrates that Sisson signed the document as an agent of TRD, not individually.  (PBA 17.)  "It is a fundamental principal of contract law that parties to a contract may bind only themselves and . . . may not bind a third person who is not a party to the contract in the absence of his consent to be bound." *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 438, 238 S.E.2d 597, 602–03 (1977) (citation omitted).  Accordingly, to the extent Plaintiffs claim Sisson breached the PBA, the Court concludes that Plaintiffs have come forward with no evidence to substantiate such a claim, and Sisson is entitled to summary judgment in his favor on this claim.  Accordingly, the Court GRANTS the Motion as it relates to Sisson and DISMISSES Plaintiffs' first claim for relief against Sisson.

14.    Turning to Plaintiffs' first claim as it relates to TRD, a breach of contract requires the existence of a valid contract and a breach of the terms thereof.  *Poor v.*

*Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). "The essence of any contract is the mutual assent of both parties to the terms of the agreement . . . ." *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) (citation omitted); *see also Normile v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) ("It is axiomatic that a valid contract between two parties can only exist when the parties assent to the same thing in the same sense, and their minds meet as to all terms." (citation and quotation marks omitted)).

15.    "Ordinarily one party, by making an offer, assents in advance; the other, upon learning of the offer, assents by accepting it and thereby forms the contract." *Schwarz v. St. Jude Med., Inc.*, 802 S.E.2d 783, 789 (N.C. Ct. App. 2017) (quoting Restatement (Second) of Contracts § 23 cmt. a).

> If the terms of the offer are changed or any new ones added by the acceptance, there is no meeting of the minds and, consequently, no contract. This counteroffer amounts to a rejection of the original offer. The reason is that the counteroffer is interpreted as being in effect the statement by the offeree not only that he will enter into the transaction on the terms stated in his counteroffer, but also by implication that he will not assent to the terms of the original offer.

*Normile*, 313 N.C. at 103, 326 S.E.2d at 15 (internal citations and quotation marks omitted).

16.    The materials submitted to the Court reveal that Sisson's e-mail presented Plaintiffs with an offer for TRD to purchase the assets in question for $3.3 million. Watson's February 6, 2018 e-mail response requesting that an effective date and parties be added to the contract amounted to a counteroffer and, thus, a rejection of TRD's offer. Sisson's response forwarding the Microsoft Word version of the PBA and

instructing Watson to "modify as needed" invited Plaintiffs to present TRD with a counteroffer.

17. Plaintiffs have presented no evidence that the parties engaged in further discussions or exchanged further drafts after the above-referenced e-mail exchange. Further, the PBA submitted to the Court by Plaintiffs contains neither Plaintiffs' requested effective date nor the correction of the parties to the contract. (*See generally* PBA.) In addition, the evidence before the Court is undisputed that Sisson executed the PBA on February 5, 2018, the day *before* Watson rejected TRD's offer. (*See* Sisson Aff. Ex. A.)

18. Plaintiffs have also failed to provide admissible evidence to indicate when Watson, on behalf of Plaintiffs, signed the version of the PBA attached to the Complaint. Defendants, on the other hand, have provided the Court, through affidavits and exhibits thereto, with admissible evidence that Watson did not sign the PBA prior to rejecting TRD's offer on February 6, 2018.

19. Upon the filing of the Motion and Defendants' submission to the Court of admissible evidence that, rather than accept the offer contained in the PBA, Plaintiffs rejected the offer by requesting changes thereto, Plaintiffs were obligated to come forward with admissible evidence from which the Court could find that a material issue of disputed fact existed as to Defendants' forecast of evidence. *See Gaunt*, 139 N.C. App. at 784–85, 534 S.E.2d at 664. Plaintiffs have failed to do so.

20. Accordingly, the uncontroverted evidence shows that on and after February 6, 2018, Watson lacked the power to accept Sisson's draft of the PBA (submitted on

behalf of TRD) and therefore, regardless of whether Watson signed the version of the PBA attached to the Complaint on February 6, 2018 at 4:47 p.m. (a minute after his rejection) or months later, there was no meeting of the minds as to the execution of that specific agreement. As a result, the Court concludes that the PBA, attached as Exhibit A to Plaintiffs' Complaint, is not an enforceable agreement and Defendants' partial motion for summary judgment as to Plaintiffs' first claim regarding TRD's breach of the PBA should be granted.

21. Defendants set forth an additional argument that, if the Court were to find there was a valid acceptance of the PBA, the Motion should nonetheless be granted based on Plaintiffs' failure to satisfy the conditions precedent or representations and warranties contained in the PBA. Because the Court finds that there was no valid acceptance of the PBA, and therefore no enforceable agreement, it need not reach and does not decide Defendants' second basis for summary judgment.

## IV. CONCLUSION

22. **THEREFORE**, the Court **GRANTS** the Motion in its entirety. Plaintiffs' first claim brought against Sisson and TRD for alleged breach of the PBA is **DISMISSED** with prejudice.

**SO ORDERED**, this the 1st day of April, 2019.

/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases