# Jeremy Dickson and Sandra Dickson v. John W. McMahan and Roland C. Carter

[433 A.2d 310]

No. 246-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed June 16, 1981

*Otterman and Allen, P.C.*, Bradford, for Plaintiffs.

*William A. Kelk* of *Kilmurry & Stone, P.C.*, Stowe, for Defendant.

**Barney, C.J.** Defendant McMahan appeals from a judgment order requiring him to convey a house and approximately 40 acres of land to the plaintiffs Dickson. McMahan owned the property as a tenant in common with defendant Carter at the time of this suit, but has become the sole defendant since Carter has subsequently conveyed his interest to McMahan. The property is located in Bradford and Newbury.

The trial court found the following facts. The plaintiffs and the defendants carried on negotiations for the sale of the property in 1977 and early 1978, but were unable to agree on terms. On April 4, 1978, plaintiff Jeremy Dickson called defendant McMahan and offered $57,000 for the property, with a June 1, 1978, closing date. On April 6, 1978, McMahan called the Dicksons and accepted the $57,000 offer but requested a September 1, 1978, closing date. On April 23, 1978, the plaintiffs sent McMahan a proposed purchase and sale agreement for $57,000 and a deposit check for $500. The proposed agreement changed the closing date to August 25, 1978, and made the sale conditional upon plaintiffs' sale of their house and upon their obtaining financing within 14 days. The letter accompanying the agreement stated that the "contingencies . . . are merely pro forma as I already hold a purchase and sale agreement on [the house], and I anticipate no problems in obtaining financing (I should hear within a week.)." McMahan answered by letter on April 27, returning the agreement and the $500 check because the cotenant Carter's first name was incorrect on the agreement. That was the only reason he gave for returning the agreement. McMahan stated in the letter, "I am in agreement insofar as the date of possession is concerned and the purchase price and I believe Mr. Carter is too." He went on to express a desire to negotiate as to when he received his share of the money, saying he needed "to talk with a tax man before that to discuss the matter of capital gains." The plaintiffs then prepared an identical purchase and sale agreement with the name change and had Carter sign it. On May 11, McMahan telephoned the plaintiffs and stated that he could not agree to the two condi-

tions relating to the sale of the plaintiffs' house and the obtaining of financing. He refused to sign the corrected purchase and sale agreement, and returned it, along with the deposit, to the plaintiffs by letter dated May 25, 1978. It is interesting to note that when McMahan sent the May 25 letter, he was in possession of a $70,000 certified check from another prospective purchaser. At trial McMahan said he was not interested in that sale and had returned the check. Upon initiation of this suit, however, he filed a counterclaim alleging damages because the $70,000 sale had been forestalled. He later agreed to dismissal of the counterclaim.

The trial court concluded that McMahan's April 27 letter satisfied the Statute of Frauds, 12 V.S.A. § 181, and that it constituted an acceptance of the conditions in plaintiffs' April 25 letter, namely, moving the closing date to August 25 and making the agreement subject to selling their house and obtaining financing. The court also concluded that McMahan had entered into a specifically enforceable contract for the sale of the property on the terms proposed by the plaintiffs when he returned the proposed purchase and sale agreement requesting only that the name of Mr. Carter be corrected in the final version to be signed by McMahan.

McMahan's first argument asks this Court to determine that the parties intended that no contract would be formed until a formal purchase and sale agreement was fully executed. Our search of the record shows that this claim was not made in the court below. Issues not raised below are waived on appeal. *Sanville v. Williams*, 138 Vt. 498, 501, 418 A.2d 860, 862 (1980).

McMahan next argues that his April 27 letter added an additional term to be agreed upon before the formation of a contract, to the effect that he wanted to do some negotiating as to when he was to receive his portion of the payment. The trial court concluded that the method of payment was not to be a part of the formal sales agreement; rather, it would be an informal and collateral agreement to be worked out later.

The April 27 letter shows an acceptance of the date of possession and the purchase price. At that point, a contract for the sale of the property was formed. If the parties did not agree upon a time or method of payment, "the law construes

the offer to be for cash on delivery and before title passes." *Ackerman* v. *Carpenter*, 113 Vt. 77, 81, 29 A.2d 922, 924 (1943). The letter, together with the purchase and sale agreement incorporated by the letter, contained all of the essential elements—the description of the land, the purchase price, and the date of closing. This case is not like *Reynolds* v. *Sullivan*, 136 Vt. 1, 383 A.2d 609 (1978), where the agreement anticipated financing by the sellers. The plaintiffs here had arranged financing, and would have been ready to pay on the date of closing had McMahan agreed to convey the property. The only unagreed upon term was the manner in which the proceeds were to be dispersed to McMahan for the purpose of making the most favorable tax situation for him. Since that circumstance was entirely for his accommodation and did not deal with the essentials of the sale of the property, even without agreement on that aspect, the contract was sufficiently definite to be specifically enforced. See *Shull* v. *Sexton*, 154 Colo. 311, 390 P.2d 313 (1964); *Kier* v. *Condrack*, 25 Utah 2d 139, 478 P.2d 327 (1970).

■■ This Court stated in *Ackerman* v. *Carpenter, supra,* 113 Vt. at 81, 29 A.2d at 925, "The question whether there was a contract between the parties does not depend alone upon the specified facts found but also upon the reasonable inferences to be drawn from them." It is reasonable to conclude that McMahan's April 27 letter consummated a contract between the parties for a sale of the property and that the method of payment to McMahan of his portion could be left to later negotiation or could be satisfied by payment on the date of closing. The result below is without error.

The original order provided for a date of conveyance and for allocation of property taxes. Since the date set forth has passed, the cause will be remanded for a new order.

*Judgment affirmed. Cause remanded for an order consistent with the views expressed herein.*