**Dominic P. Losordo v. Department of Employment Security**

[449 A.2d 941]

No. 221-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed July 7, 1982

*Donald C. Arbitblit* of *Langrock Sperry Parker & Stahl*, Middlebury, for Plaintiff-Appellant.

*Lawrence A. Dinerstein*, Senior Assistant Regional Labor Counsel, New York, New York, for Defendant-Appellee.

**Peck, J.** Claimant Dominic Losordo was employed by the United States Postal Service (employer) on June 2, 1980, as a temporary, or "casual," employee, at the Burlington, Vermont, Post Office. He was, on the date he commenced employment, and at all times material, a resident of East Middlebury, Vermont, and traveled daily a total of approximately eighty miles from his home to Burlington and return.

There are several characteristics of casual employment in the postal service applicable to all employees having that status. Under the employer's regulations, a casual employee is given a ninety-day appointment subject to reappointment

for an additional ninety days (or a total of 180 days) within the same calendar year. There are no guaranteed hours of work per day, and in claimant's case the hours worked varied from three in the slow season, to overtime, especially in the Christmas season. Claimant's pay remained constant at $4.76 per hour, for all hours actually worked, including overtime, throughout the period of his employment. Casuals participate in few if any of the benefits accorded permanent status employees, nor are they represented by any worker organization.

Having completed the maximum 180 days of work in 1980, claimant's employment was terminated on December 23rd of that year. He was, however, offered a third casual appointment to commence sometime in January 1981. This offer claimant refused, giving as his reason that he could not afford the cost of commuting to Burlington. It appears as well that he became disgruntled when he learned that, because of new federal regulations relating to employment opportunities for veterans of the Vietnam conflict, he had been "bumped" from sixth to seventeenth place on a list of eligibles for permanent positions with the Postal Service. He stated expressly to the referee, however, "that the fact that I was not going to be made permanent was not the reason for leaving."

Following his termination claimant applied for unemployment benefits. These benefits were denied at all levels, *i.e.*, the claims examiner, the appeals referee, and the Employment Security Board. He now appeals to this Court from the decision of the Board.

Both the Board and the referee denied the claim on the basis of 21 V.S.A. § 1344(a)(2)(A), holding that claimant left his last employment voluntarily without good cause attributable to the employer. He contends, among other things, that reliance upon this statutory provision was error, and that his entitlement should have been determined under 21 V.S.A. § 1344(a)(2)(C). This provision denies benefits to one who fails, "without good cause . . . to accept suitable work when offered him."

We agree with the claimant's position on this issue. Whatever may have been his response to the offer of further employment to commence in January of 1981, and whether or

not the offer of renewed employment was for identical work in the same labor market area, *In re Barcomb,* 132 Vt. 225, 315 A.2d 476 (1974), he had accepted as his own, he left his employment on December 23, 1980, because he was terminated by his employer on that date. He had no choice in the matter.

The claimant could not have worked for the employer, at least from December 23rd through the 31st (and until the effective date of the offer of renewed employment). His job ended through no fault of his own. *Anthony Adams AIA Architect* v. *Department of Employment Security,* 139 Vt. 413, 414–15, 430 A.2d 446, 447 (1981). Accordingly, his refusal to return to the job cannot be "bootstrapped" by the employer to constitute a sort of retroactive voluntary leaving. His decision against returning, whether announced before or subsequent to December 23, 1980, has no relation or relevancy to the reason in fact for the end of employment; the attempt to tie the two together was error.

*Reversed and remanded to the Employment Security Board for further findings and for the computation of benefits, if any, to which claimant may be entitled, in accordance with this opinion.*

**Peck, J.,** concurring. It is perhaps unusual for the author of a majority opinion to prepare a concurring opinion as well; it is not, however, precedential by any means.

In this particular case, the majority is unwilling to go beyond the point it considers necessary to dispose of the case. It is justifiably apprehensive that the opinion will assume an advisory character, see *Wood* v. *Wood,* 135 Vt. 119, 121, 370 A.2d 191, 192 (1977), going beyond mere dicta, if it is extended.

I do not disagree with this concern. Nevertheless, when additional issues have been raised by the appeal, and briefed and argued as well, I feel it is appropriate to comment on them through a concurring opinion, realizing of course that such a concurrence neither establishes law, nor does it necessarily represent the views of my colleagues, individually or *en bloc.*

It is my view also, in this particular case, with the caveat that what follows represents only my personal views, that

this concurrence may be helpful in forestalling protracted litigation, including perhaps a second appeal.

The majority might well suggest that such an objective is not a proper function of this Court. In areas such as this, however, a court's "proper function" is, in my view, a philosophical and policy matter rather than one of law or legal powers. Accordingly I have elected to address some of the other issues presented by the case at bar.

First, I think it desirable to distinguish the instant case from *Anthony Adams AIA Architect* v. *Department of Employment Security*, 139 Vt. 413, 430 A.2d 446 (1981). While both cases involve limited periods of employment, the question in *Adams* related solely to the claimant's entitlement to benefits following the expiration of the period and the consequent termination of employment. There had been no offer of reemployment. On the other hand, the underlying issue before us now revolves around an offer of employment, or even more narrowly, of reemployment, in the identical position from which the claimant had been terminated.

The criteria for determining what is "suitable work" under 21 V.S.A. § 1344(a)(2)(C) is addressed by § 1344(a)(2)(D). *Martin* v. *Department of Employment Security*, 138 Vt. 475, 477, 417 A.2d 932, 934 (1980). Examining that statute in the light of the matter before us, it is evident that one of the primary concerns of this provision is the statutory language "the distance of the available work from his residence."

Claimant cites *Palucci* v. *Department of Employment Security*, 135 Vt. 156, 376 A.2d 14 (1977), in support of his position. In that case we held that a waitress could not reasonably be expected to "move, buy a car, or hire a cab to reach a job outside the [labor market] area, seven miles distant, paying $1.50 per hour plus tips for work as a breakfast waitress," *id.* at 159, 376 A.2d at 17; accordingly she was justified in refusing a referral by Vermont Job Service to the job opening.

In *Palucci* the job opportunity was with an entirely new employer as far as the claimant in that case was concerned, and not, clearly at least, within her labor market area. In the instant case the employer, the wages, and all other terms and

conditions of employment, including the work station in Burlington and the travel required, would have been identical under the job offered to him as they had been during the two prior appointments. In short, it was the same job in the same labor market area he had adopted as his own. Under these circumstances, his transportation problem was not one connected with the work itself, but rather a "domestic problem." *In re Barcomb*, 132 Vt. 225, 231, 315 A.2d 476, 480 (1974). It is clear, moreover, that at the expiration of his initial ninety-day appointment, which commenced on June 2, 1980, he accepted a second appointment to the same job, again under the same terms and conditions as the first, and without any complaint.

Claimant contends next that at the time of his initial interview prior to his first appointment he was not fully informed of the terms and conditions of employment. Specifically he complains, and so testified, that he was not told by the employer that he would receive no overtime pay, nor any Sunday or night differential. Even if this is true, it should avail him nothing at this point in time, given his admission that he learned of these conditions from other employees, worked through his initial appointment, and accepted a second under all the terms and conditions applicable to his position. Further, notwithstanding his own testimony as to what he was or was not told, the employer introduced evidence, the substance of which was that, when a casual worker is first employed, his orientation customarily includes the information claimant says he was not given. Particularly in the light of this evidence, the Board was not bound, under pain of fatal error, to accept the claimant's testimony, even if there is no shadow of contradiction. *McKinney* v. *Kelley*, 120 Vt. 299, 308, 141 A.2d 660, 667 (1957). These general rules have even stronger applicability when, as here, the "witness" is an interested party; the trier of fact is given the exclusive right to determine credibility. *Capital Candy Co.* v. *Savard*, 135 Vt. 9, 12, 369 A.2d 1361, 1363 (1976).

I reject also claimant's argument that he was somehow discriminated against. There is no evidence that claimant was treated any differently than anyone else in the class (casual employees) to which he belonged during his period of em-

ployment. Nor does he suggest that the creation and existence of this class of employees is in any way illegal as contrary to the controlling federal laws or regulations. In any event, neither the Board nor this Court are, in my judgment, proper forums in which to raise such questions.

Claimant's argument that the position offered to him was substantially less favorable than those prevailing for similar work in the locality, 21 V.S.A. § 1344(a)(2)(E)(ii), is an exercise in concept juggling. The "similar work" in this case relates to any work properly assigned to casual employees. While the work performed by this class of persons may indeed vary widely, depending on the needs of the employer at a given time, and the qualifications of the employee to perform the duties, there is no evidence to indicate that it is beyond the scope of casual employment to assign work to such employees as the need arises, simply because it is regularly performed by permanent workers. In fact the filling of temporary needs is the very reason for the creation and continuation of the casual class. I do not believe the employer was under any duty to furnish claimant with, or promote him to, a permanent full-time position. *Healey* v. *Department of Employment Security*, 140 Vt. 79, 81, 436 A.2d 753, 755 (1981).

Finally, claimant argues that the offer lacked sufficient specificity as to the starting date, hours, and wages to constitute a firm and definite offer, and consequently his failure to accept the offer does not disqualify him for unemployment benefits.

In support of his position on this issue, claimant cites *Calabi* v. *Department of Employment Security*, 135 Vt. 392, 376 A.2d 349 (1977). The facts of that case are poles removed from the case before us. The letter from the prospective employer to Calabi was, as this Court expressly pointed out, no more than the "commencing of negotiation in the bargaining process," *id.* at 393, 376 A.2d at 350, in a situation which was open to negotiation before all terms and conditions could be finalized. There was, for example, not even a wage offer made in the letter.

In the instant case, the very essence of the job itself includes uncertainty as to the hours per day which would be

worked. Unlike *Calabi*, the rate of pay offered to claimant here was set and was known to him; it was an established hourly rate which he had accepted for over six months. *Calabi* does not mean that all jobs must necessarily guarantee a certain number of work hours; that would be absurd on its face. It means only that in that instance there had been, as a matter of law, no finalized firm offer made, to say nothing of an acceptance. The situation might have been quite different if Calabi had actually commenced work for the employer as a result of the letter, and continued employment for any period of time.

In its finding number 2 the offer of reemployment was to commence on January 3, 1981. This finding, however, is not supported by the record. The appeals referee and exhibit 1 both indicate it was to commence on January 1, 1981. On the other hand, exhibit 2 (second page) notes January 18, 1981, as the date the claimant himself believed would be the effective date at the time of his interview with the Department of Employment Security. This date could, obviously, be significant, and should be resolved by the Board on remand, having in mind that the concern is the effective date of the offered appointment rather than (necessarily) of the actual work to be done thereunder.

When claimant reached the appellate level here, argument was heard for the first time to suggest that one reason justifying his refusal to accept reemployment with the Postal Service was, in substance, diminution in the likelihood of it leading to a permanent position. The argument being raised here for the first time is not for review. *Dickson* v. *McMahan*, 140 Vt. 23, 25, 433 A.2d 310, 312 (1981). Moreover, as noted in the majority opinion, claimant stated expressly that this lost expectancy was not his reason for leaving. He should not be heard now to say that it was.

Supervening all considerations and arguments in this case, in my view, is the fact that claimant worked, with full knowledge of all the terms and conditions applicable to his job, accepting not only a first appointment but a second as well under the identical terms, for a total of 180 days.

There is an inequitable flavor about a situation, with a factual pattern like the one presented here, which would per-

398

mit a claimant to accept work as long as he wishes it, and thereafter "punish" an employer who is without fault when the offer of further and identical work no longer suits his convenience.

In my judgment the Board should have resolved this matter under 21 V.S.A. § 1344(a)(2)(C), and made findings consistent with the majority opinion, and thereafter have computed and awarded the benefits to which he is entitled, however minimal they may be. Having failed to do so, I agree that a remand is necessary for those limited purposes.