## SISTERS & BROTHERS INVESTMENT GROUP v. VERMONT NATIONAL BANK, Gerald B. DeForge, Richard Mazza, David Coates and Maurice Germain

[773 A.2d 264]

No. 99-349

March 12, 2001. Defendants/buyers, Richard Mazza, David Coates, and

---

Maurice Germain (the Mazza group) appeal from a grant of partial summary judgment in favor of plaintiff/buyer, Sisters and Brothers Investment Group (SBI). In granting summary judgment, the Chittenden Superior Court ordered specific performance of a purchase and sale agreement between SBI and Shore Properties, Inc. to sell a restaurant, and surrounding land, on Lakeshore Drive in Colchester. The Mazza group, who also purchased the restaurant, argues that the court erred because (1) the purchase and sale agreement was not a valid option contract, (2) there was no valid contract between SBI and Shore Properties, Inc. because a special condition contained within the purchase and sale agreement failed, (3) there was no meeting of the minds on the terms of the alleged contract, and (4) there was a genuine dispute of material fact on the issue of the parties' intent such that summary judgment was inappropriate. SBI cross-appeals and argues that the court erred (1) by refusing to order a warranty deed instead of a quitclaim deed, and (2) by refusing to impose the maintenance costs of the property on the Mazza group pending the outcome of the instant appeal. We affirm.

Defendant/seller, Gerald DeForge, was president and treasurer of Shore Properties, Inc., which owned the property at issue. Defendant Vermont National Bank held the mortgage on the property and a second mortgage on DeForge's nearby residence as additional security. In March 1998, the bank started foreclosure proceedings against the property and DeForge's home. In June 1998, SBI, represented by one of its partners, Joseph Handy, expressed an interest in purchasing the property and began negotiations with DeForge, as Shore Properties' agent, through a third party. By June 30, 1998, DeForge and Handy had reached an oral agreement, and DeForge's attorney and Handy's real estate agent drafted a purchase and sale

agreement that was executed that day by Handy and DeForge.

This agreement contained two terms relevant to this appeal: (1) the sale price of $200,000, and (2) a special condition reading: "Contract subject to releasing Shore Properties, Inc. and Gerald B. DeForge form [sic] all claims and mortgages by Vermont National Bank." Subsequent to this agreement, Handy tried to get the bank to provide the contemplated release for the designated price of $200,000, which was well below the amount owed to it, or in the alternative, to have DeForge himself pay the excess amount over $200,000 necessary to meet the bank's demands. Handy also asked the bank to extend the redemption period.

On July 24, 1998, the court issued a judgment of foreclosure for the restaurant property against Shore Properties, DeForge, and others not party to this appeal. The court ordered the redemption period to end August 24, 1998, for Shore Properties and August 25 & 26 for DeForge. The court set the redemption amount at $448,044. In August, Handy continued to negotiate with the bank; the bank agreed to provide the release to DeForge, as contemplated by the purchase and sale contract, in exchange for $325,000, and agreed to extend the redemption period for DeForge until September 30, 1998. On August 20, 1998, the bank contacted DeForge and Shore Properties and offered to release DeForge for $325,000 if received by September 30, and if accompanied by both a written acceptance and a copy of the purchase and sale agreement with Handy. The bank's offer was to be open for ten days. DeForge responded that there was no contract with Handy because the bank had refused the $200,000 price, and he would not agree to the inclusion of the purchase and sale agreement as a term.

On August 24, 1998, Shore Properties, DeForge, and the bank stipulated to an extension of the redemption period for Shore Properties to September 29, 1998, an extension for DeForge to September 30, and a reduction in the redemption amount to $325,000. In early September, agents for Handy and DeForge communicated regarding the sale of the property, and DeForge maintained that there was no agreement to sell to Handy and SBI. On September 24, 1998, the court amended its judgment and approved the new redemption periods and the amount.

Between September 25 and September 27, 1998, Handy offered to pay $300,000 toward the $325,000 redemption amount if DeForge would make up the difference. During this same time period, the Mazza group made DeForge an offer of $325,000, and there was deposition testimony from Handy that an agent representing SBI orally communicated SBI's willingness to pay the full $325,000 to DeForge's agents. On September 28, the Mazza group contacted the bank. The following day, Handy faxed DeForge and the bank an offer to pay the full $325,000 in order to "obtain a complete release of Shore Properties, Inc. and Gerald B. DeForge." Handy's position was that the special condition of the contract was satisfied, and he demanded performance of the contract. DeForge responded that there was no binding agreement with SBI because the bank had rejected it back in late June when it turned down the offer for $200,000. DeForge also revealed that there was another party interested in the property. That same day, Shore Properties assigned all its rights in the property to the Mazza group, and the bank assigned DeForge all its rights under the loan agreements and the foreclosure decree. DeForge then assigned these same rights to the Mazza group, except those rights with regard to DeForge's residence.

In October 1998, the Mazza group became the plaintiffs in the foreclosure action, the court modified its decree to run to the Mazza group rather than the

bank, and the court issued a certificate of nonredemption and a writ of possession for the Mazza group. On November 12, 1998, SBI filed a complaint against the bank, DeForge, and the Mazza group, seeking specific performance of the purchase and sale agreement and damages for breach of contract. In January 1999, the Mazza group moved for summary judgment, and in February, so did the bank and SBI.

On May 6, 1999, under V.R.C.P. 56, the court granted partial summary judgment for SBI on the grounds that the purchase and sale agreement constituted an option contract with the redemption period as the time limit. It ordered partial final judgment under Rule 54(b) for specific performance of the purchase and sale agreement, and granted the Mazza group's motion to compel SBI to accept a quitclaim deed, tender the $325,000, and take possession of the property. SBI's request for a stay of this order was denied by this Court. SBI subsequently paid the Mazza group $325,000 in exchange for a quitclaim deed, and took possession of the property. Both the Mazza group and SBI appeal.

During the pendency of this appeal, SBI filed a motion to dismiss, claiming that the appeal was mooted by the Mazza group's motion to compel and the subsequent transfer of the property by quitclaim deed. This argument is without merit, and the motion is denied. Complying with a court order does not moot an appeal; if we reverse the grant of partial summary judgment, then the property may just as easily be reconveyed under a new order from the trial court or from this Court. *In re Barlow*, 160 Vt. 513, 518-19, 631 A.2d 853, 857 (1993) (compliance with injunctions or orders does not moot an appeal). The mere fact that the Mazza group moved to compel the transfer instead of waiting for SBI to serve a writ of possession does not make this appeal moot. Defendants were acting to protect themselves from absorbing the costs associated with maintaining the property, instead of running the risk of a windfall to SBI in the case of an affirmance.

SBI also argues that we are without jurisdiction because defendants' appeal is untimely. SBI's argument is based on the fact that the Mazza group filed a post-judgment motion to reconsider, and its notice of appeal was filed within 30 days after the motion's denial but more than 30 days after the original decision. It claims that defendants' motion to reconsider is more aptly characterized a V.R.C.P. 60(b) motion for relief from judgment than a Rule 59(e) motion to alter or amend, and that a 60(b) motion does not toll the time limit for appeal. The motion to reconsider was, "for all intents and purposes, a motion to alter or amend the judgment," and hence the appeal is properly before us. *Murray v. St. Michael's College*, 164 Vt. 205, 208, 667 A.2d 294, 297 (1995).

On reviewing the merits, we note that summary judgment is appropriate where the record indicates there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Politi v. Tyler*, 170 Vt. 428, 431, 751 A.2d 788, 790 (2000); V.R.C.P. 56(c). When reviewing a grant of summary judgment in favor of one party, we use the same standard as the trial court, and give the benefit of all reasonable inferences to the nonmoving party. *Bixler v. Bullard*, 172 Vt. 53, 57, 769 A.2d 690, 694 (2001).

The Mazza group's first argument is that the Handy agreement is not properly characterized as an option. See *Martin v. Vector Co.*, 498 F.2d 16, 21 (1st Cir. 1974) (agreement between two developers and government agency held to be binding bilateral purchase and sale agreement with a condition and not option contract). The trial court used the term "option" because it found that Handy had control over the release condition and failure to obtain the

releases extinguished the contract with no further obligation on Handy's part. Thus, in effect, the contract bound DeForge, but not Handy. This is a question of labels, not substance. However the contract is labeled, plaintiff sought to have it enforced by specific performance, and the superior court agreed. We must decide whether this enforcement decision was correct.

The Mazza group's main argument, mirroring the position taken by DeForge, is that the contract was extinguished as a matter of law because SBI failed to obtain the required release from the bank for $200,000 and hence the special condition was never met. The Handy agreement memorializes an exchange of promises for consideration that are mutually binding. SBI promised to pay $200,000, and DeForge, as agent for Shore Properties, promised to sell the property. We find the Handy agreement to be a valid bilateral contract with a condition. See *id.*; 3 E. Holmes, Corbin on Contracts § 11.18, at 622-26 & nn.3-4 (rev. ed., J. Perillo, ed. 1996). Once a special condition or condition precedent in the contract is fulfilled, the contract becomes binding on both parties. See 3A A. Corbin, Corbin on Contracts § 628, at 16 (1960). Alternatively, nonoccurrence of the condition discharges the parties' duty to perform. See Restatement (Second) of Contracts § 225(2) (1981).

The Mazza group argues that the condition here was that the bank provide the specified releases on payment to it of $200,000. The contract does not, however, link the provision of the releases to the payment of the $200,000. The bank is not a party to the contract; it is mentioned solely as the holder of the mortgages. The contract is silent on how the releases would be obtained, and did not preclude plaintiff from paying the contract price to DeForge and additional funds to the bank for the releases, or any other arrangement that would produce the releases. Indeed, there is no reason why such arrangements would be unacceptable to DeForge, whose concern was to avoid continuing personal liability to the bank, secured by the second mortgage on his home. The Mazza group asks us to read into the contract terms that are not there.

The Mazza group argues that if the contract is not interpreted as it urges, the standard form purchase and sale agreement did not create a contract because substantial terms were missing. We agree that the terms of a contract must be "reasonably certain." *Id.* § 33(1). Here, the Mazza group relies on musings of the trial judge in a free-flowing discussion, but does not specify what essential term is missing from this standard form purchase and sale agreement. This argument is really a recasting of its earlier argument that the contract must have linked the $200,000 price and the release condition. The agreement here specified the property at issue, provided for a purchase price, necessarily embodied a time limit beyond which closing could not occur (the sale had to be completed before Shore Properties' right of redemption was extinguished in the foreclosure action),* and allocated the

---

* Although the Mazza group has never raised the absence of a closing date as a missing, essential condition, the trial judge, in concluding that the contract created a form of option, expressed concern that a contract had to have a time limit. The absence of a closing date does not defeat a contract for the purchase and sale of real estate. Instead, the law presumes a reasonable time to close. See 14 Powell on Real Property § 81.03[5], at 81-110 (2000). Here, the specification of a reasonable time is obvious because the whole point of the contract was to avoid a foreclosure of the mortgage on DeForge's home, which would occur unless a sale, by some device, occurred before the expiration of the redemption period. Thus, it

transaction risks and responsibilities between the parties. How the special condition was to be satisfied was not specified in the contract, but we agree with plaintiff that the method of satisfying the condition was not an essential element. See *Agway, Inc. v. Marotti*, 149 Vt. 191, 194-95, 540 A.2d 1044, 1046 (1988) (fact that some details regarding means of carrying out agreement were not included was "unimportant" in face of unambiguous writing).

We also cannot agree that there was no meeting of the minds. There is no dispute that DeForge intended to be bound by a contract although he may have expressed an interpretation of the contract different from plaintiff. Cf. *Bixler v. Bullard*, 172 Vt. at 57-60, 769 A.2d at 694-95 (summary judgment inappropriate where intent to be bound was in dispute). Also, there is no dispute that each party assented to the same written contract. See Restatement (Second) of Contracts § 23 (1981). The Mazza group's argument is that DeForge did not agree that plaintiff could or would pay $125,000 more to the bank to obtain the release. Since none of the money was going to end up with DeForge in any event, we do not believe that this difference of understanding makes the contract unenforceable. See *Martin*, 498 F.2d at 23 n.7 (paying more than agreed upon, making contract more attractive, does not void contract).

We also reject the Mazza group's final argument that summary judgment was

is expectable that the parties might not include a specific date in the purchase and sale contract because they recognized that the pace of the foreclosure action would determine when they had to close. Indeed, DeForge agreed to extend the redemption period until September 30 in order to work out a sales contract that would involve no personal liability on his behalf and would release his home from the mortgage. That purpose was realized within the redemption period.

inappropriate because there was a genuine issue of material fact on the parties' intent that required a trial. If a contract is unambiguous, its construction is a question of law. *Morrisseau v. Fayette*, 164 Vt. 358, 366, 670 A.2d 820, 826 (1995). Moreover, whether a contract is ambiguous or not is a question of law. *Id.* We see the Handy agreement as unambiguous, and thus, extraneous evidence of the parties' intentions would be irrelevant to its meaning as a matter of law. Summary judgment was thus appropriate. See *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 49-50, 582 A.2d 123, 126 (1990) (even though provision could have been more precise, no genuine issue of material fact on whether provision was enforceable).

Because of our disposition of the contract issues, we do not reach plaintiff's alternative argument that the superior court's decision can be upheld under the constructive trust doctrine.

We next turn to SBI's arguments on its cross-appeal that the court erred (1) by refusing to order a warranty deed instead of a quitclaim deed, and (2) by refusing to impose the maintenance costs of the property on defendants/buyers pending the outcome of the instant appeal. Granting a decree of specific performance is not a matter of absolute right. *Willard v. Tayloe*, 8 U.S. (Wall.) 557, 568 (1869) ("The relief which the complainant seeks rests, as already stated, in the sound discretion of the court; and, if granted, it may be accompanied with such conditions as will prevent hardship and insure justice to the defendant."). When giving an equitable remedy like specific performance, courts are given considerable discretion to do justice between the parties. See *Johnson v. Johnson*, 125 Vt. 470, 472-73, 218 A.2d 43, 45 (1966) (equitable considerations make exercise of judicial discretion proper in ordering specific performance). We are dealing here with third parties, albeit with notice of plaintiff's conflicting

claim, but not the original seller. These third parties took their interest through a mortgage foreclosure. A quitclaim deed is as effective to transfer title in real property as a warranty deed. See *Khamis Enters., Inc. v. Boone*, 480 S.E.2d 364, 366 (Ga. Ct. App. 1997); *Teson v. Vasquez*, 561 S.W.2d 119, 130 (Mo. Ct. App. 1977); *McCoy v. Lowrie*, 268 P.2d 1003, 1004-05 (Wash. 1954). We conclude that the court's decree of specific performance requiring SBI to accept a quitclaim deed, rather than a warranty deed, was not an abuse of discretion.

Given the disposition of this appeal, SBI's second argument is moot. *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 100 (1997) (case moot when no live issues or legally cognizable interest in outcome).

*Affirmed.*