Reynolds v. Brosseau, S1153-01 CnC  (Katz, J., Dec. 29, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                          SUPERIOR COURT

Chittenden County, ss.:                   Docket No. S1153-01 CnC


DORIS REYNOLDS, TRUSTEE OF THE FRANK IRISH TRUST

v.

RONALD P. BROSSEAU and PETER SMEJKAL


ENTRY

This is a contract formation case.  Defendants Brosseau and Smejkal seek specific performance on a purchase and sale agreement that they signed with Frank Irish as purchasers on March 18, 1996.  This action was originated by Frank Irish, recently deceased.  Doris Reynolds as trustee of the Frank Irish trust now holds title to the land in question subject to probate review of the will.  Reynolds as trustee disputes the enforceability of the agreement citing to its incomplete and missing terms as illustrative of its lack of binding intent.  Both parties have moved for summary judgment.

Frank Irish's estate contains a 26.3 acre lot on Allen road in South Burlington, where Irish had farmed. As with many farms in the areas immediately outlying Burlington, Irish appears to have moved away from agrarian pursuits in the mid-1990s toward developing his parcel into much more profitable suburban sub-developments. In 1996, Irish had an increased property tax bill from the city and limited means to pay it. (Pl. Resp. to Mot. to Am. Answer, Feb. 18, 2003, at 7). Irish was also suffering from serious medical problems. Id. at ex. 4 (Dep. of Frank Irish); (Aff. Doris Reynolds, Jun. 12, 2002). During this time, his brother-in-law, Brosseau and Smejkal approached Irish about purchasing the 26.3 acre lot on Allen Road. (Pl. Stmt. Of Undisp. Facts, Feb. 18, 2003).

This led to a document signed on March 18, 1996, titled "purchase and sale agreement."[1] (Def. Suppl. Memo. in Opp'n to Summ. J., Jun. 26, 2003, at ex. A). The document identifies Frank Irish as seller and the Irish Development Corporation, represented by partners Ronald P. Brosseau and Peter Smejkal, as purchaser. Id. It describes the lot and its location, and states it will be conveyed for the purpose of developing the land into 48 residential lots based on the seller's preliminary sketch. Id. The document lays out the price as $225,000 for the property minus $10,000 down at signing and "other advance payments if any will be made prior to the final closing and ownership transfer." Id. The document does not contain any payment or financing terms leaving them to "be clarified at a later date." Id. These terms were apparently never clarified between the parties although there is evidence that Brosseau and Smejkal paid Irish $30,000 at

---

[1]While Irish came to dispute even signing the document, we will infer solely for the purposes of summary judgment that the signature is authentic.

later points in time. (Pl. Resp. to Mot. to Am. Answer, Feb. 18, 2003, at ex. 4 (Dep. of Frank Irish)) The final paragraph of the agreement allows purchaser to change the development plan for Act 250 or state and local permits. (Def. Suppl. Memo. in Opp'n to Summ. J., Jun. 26, 2003, at ex. A).

The week after the agreement was signed by all parties, Irish hired a contractor who began work on excavating and draining out wetland areas on the 26.3 acres, without a permit, which led to charges against Irish in Environmental Court. Agency of Natural Resources v. Irish, 169 Vt. 407, 409 (1999). At the beginning of the permit litigation, Brosseau appeared to act as agent for Irish, Agency of Natural Resources v. Irish, 69-5-97 Vtec (Wright, J., Nov. 19, 1999), but neither Brosseau nor Smejkal attempted to intervene or assert their rights as future owners in this litigation. They also stopped all work on obtaining permits or modification their design work after September 1996. (Pl. Stmt. of Undisp.Facts, Feb. 13, 2003). Neither Brosseau nor Smejkal attempted to close on the agreement, even after the case against Irish was resolved in August 2000.

Despite facial appearances, an agreement cannot be an enforceable contract unless it clearly and definitely expresses all of the essential terms. Evarts v. Forte, 135 Vt. 306, 310 (1977). The agreement that Irish signed lacks several necessary terms including: 1) payment terms (reserved for another document, which was never executed); and 2) a closing date. Brosseau and Smejkal argue that these terms are not essential and may be filled in.

Brosseau and Smejkal argue that the payment terms are not important because "if the parties did not agree upon a time or method of payment, 'the law construes the offer to be for cash on delivery.'" (Def.

Suppl. Memo. in Opp'n to Summ. J., Jun. 26, 2003, at 4) (quoting <u>Dickson v. McMahan</u>, 140 Vt. 23, 25–26 (1981)).  There are several problems with the defendant's use of <u>Dickson</u> and its statement concerning methods of payment.  The facts of <u>Dickson</u> involve a series of agreements between the parties that established every term of the sale except for time and method of payment.  <u>Dickson</u>, 140 Vt. at 24.  This included arranging for the source of the payment and establishing a closing date.  <u>Id</u>. at 26.  The Irish agreement has no mention of payment source or closing date.  The discussions between the parties in <u>Dickson</u> also made the time and method of payment non-essential since the purchaser had clearly communicated that it was amenable to any form and left it to seller to determine which would be best for his tax purposes.

In the Irish agreement, the payment terms were never resolved to any degree or apparently discussed.  The indicated buyer, Irish Development Corporation did not exist at the time of signing, does not currently exist, and has never existed as either a registered corporation or factual entity.  (Pl. Resp. to Memo. in Opp'n, Apr. 28, 2003, at ex. 3).  In fact, the only other evidence of this name is in an application Brosseau and Smejkal made to the South Burlington Planning Commission in February 1996.  <u>Id</u>. at ex. 4.  Selling to Brosseau and Smejkal would essentially constitute a reformation of the contract, since the purchaser is listed as Irish Development and Brosseau and Smejkal are only its agents.  <u>New York Life Ins. Co.  v. Kimball</u>, 93 Vt. 147, 153 (1919) (stating the limited equitable grounds upon which reformation will be granted).

Brosseau and Smejkal's claimed willingness to pay cash on delivery is irrelevant to resolving the payment term because it was never discussed or agreed to by Irish.  <u>Evarts v. Forte</u>, 135 Vt. 306, (1977) ("It is never enough that the parties think they have made a contract; they must express

their subjective intent in a manner that is capable of understanding), quoted in Quenneville v. Buttolph, 2003 Vt. 82 at ¶ 15.  Whatever Brosseau and Smejkal's present willingness is, it was not what Irish agreed to.  Id.  Full payment, all at once, is not something Irish would have necessarily found advantageous, and since he did not state a willingness otherwise, it remains an essential, unfulfilled term.

Brosseau and Smejkal's reliance on Dickson is further undercut by the facts surrounding Quenneville.  In Quennevile, the plaintiffs, Houghton and Campbell, sent a down payment with a note expressing their intent to be bound.  Quenneville v. Buttolph, 2003 Vt. 82 at ¶ 3.  The landowner signed a document agreeing to sell his farm to Houghton and Campbell.  Id. at ¶ 4.  Shortly thereafter, the sellers began negotiating with another party, the Quennevilles, eventually forming an oral contract.  Id. at ¶ 5.  The Quennevilles acted upon their "purchase" and moved onto the farm and began managing it.  Id. at ¶ 6.  When Houghton and Campbell sought to enforce their agreement, the court found that it was not final and lacked several important details including the financing of the purchase, amount of payments, items included as "grey matter," security for purchaser's note, and an option to be retained on a portion of land.  Id. at ¶ 8.  Sellers had not entered into an enforceable contract with Houghton and Campbell and were not bound to sell.  Id.  Even though both parties appeared to be close on several issues, the court refused to enforce what had never been reached on agreement.  Id. at ¶ 13.  The same failure to include necessary terms in a land sale contract clearly envisioning owner financing is fatal to defendant's position here.

In contrast to the Quennevilles, Brosseau and Smejkal have not done anything to further their ownership of the Irish property since 1996.  They have actually receded from possession of the Irish land since their

initial actions in 1996. Their incomplete agreement is more akin to Houghton and Campbell, whom they resemble as interested parties who negotiated but never concluded. Such limited actions do not constitute the behavior of purchasers who are trying to become property owners. Nor do they provide any of the missing terms in their agreement.

Brosseau and Smejkal's argument concerning the lack of a closing date is also similarly flawed. Brosseau and Smejkal argue that when a purchase and sale agreement lacks a closing date, it should be presumed within a reasonable time. (Def. Suppl. Memo. in Opp'n to Summ. J., Jun. 26, 2003, at 5) (citing Sisters & Brothers Investment Group v. Vermont Nat'l Bank, 172 Vt. 539, 542 n.* (2001) (mem.)). In Sisters, the question of a court-implied closing date arose in a transaction between two competing buyers seeking a property under foreclosure. Sisters, 172 Vt. at 539–40. The Court concluded that the absence of a closing date does not defeat a contract on the presumption that the parties mean to close within a reasonable time. Id. at 542–43 n.*. The Court found a reasonable time easy to determine because the foreclosure action determined it. Id. In the present case, a reasonable time is not quite as easy to determine. Brosseau and Smejkal argue that a reasonable time is a fact based determination based on the intent of the parties and what was contemplated at the time of the performance, and circumstances attending. (Def. Suppl. Memo. in Opp'n to Summ. J., Jun. 26, 2003, at 5). They argue that the wetlands issues which led to the Environmental Court case was unexpected and made it unreasonable for them to close at the time until they knew "what the costs would be associated with the restoration of the property." Id. at 6. The problem with this is that the litigation Irish was involved in did not affect his title to the land or his ability to sell it. What it really shows is that Brosseau and Smejkal did not deem themselves obligated to close.

The argument is also disingenuous in that contradicts the defendants' own reasoning. Looking at the agreement defendants would like enforced, there is no language making the transaction conditional on obtaining permits or the resolution of any potential litigation. The agreement does address permitting and environmental regulations but only to the extent that it allows Brosseau and Smejkal to reform the development plan. This show that the parties considered the potential problems and delays that Vermont and South Burlington's development regulations pose to developers. Instead of making the sale, the closing date, or any of the details of the sale conditional on this aspect, the parties chose only to allow alterations to the development plan. Thus, at the time of contracting, the parties did not evince any intent to postpone the closing. A reasonable time is not limitless or subject to the parties whim. 17A Am. Jur. 2d <u>Contracts</u> § 480. It is impossible at this point to determine when a reasonable time to close would have been. <u>Holyoke Mut. Fire Ins. Co. v. Horton</u>, 100 Vt. 228, 231 (1927) ("What constitutes a reasonable time is ordinarily a question of fact to be determined from the attending circumstances . . ."). But, it is quite certain that seven years after the agreement was signed is not reasonable.

In conclusion, this 1996 agreement explicitly evinces the expectation of a later agreement. An agreement to later agree is not a contract. <u>Quenneville v. Buttolph</u>, 2003 Vt. 82 at ¶ 16. Without this later agreement, there are several missing or vague terms that leave it incomplete. While the law allows for some missing terms, incomplete agreements cannot be bootstrapped into enforceable contracts.

Based on the foregoing, defendants motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted. The purchase and sale agreement between the two parties is declared unenforceable.

Dated at Burlington, Vermont_____, 2003.


_____
Judge