*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-313

OCTOBER TERM, 2013

| | | |
|---|---|---|
| Lonnie Chester, Administrator of the Estate of Philomena Weingarten | } | APPEALED FROM: |
| | } | |
| | } | |
| | } | Superior Court, Orleans Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Albert J. Weingarten a/k/a Albert J. | } | DOCKET NO. 275-10-05 Oscv |
| Von Weingarten and Mary Weingarten a/k/a | } | |
| Mary Von Weingarten | } | |

Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Defendants appeal the superior court's decision to enforce the parties' settlement agreement and to dismiss the pending lawsuit upon defendants paying plaintiff the sum set forth in the agreement. We affirm.

Plaintiff is the grandson and administrator of the estate of Philomena Weingarten, who died in December 2001 at the age of ninety-eight. The parties have been embroiled in a decade-long dispute concerning plaintiff's efforts to obtain an accounting of up to $250,000 of the estate's assets allegedly controlled by defendants, one of the deceased's six children and his wife, during the last few years of her life. In September 2005, the probate court granted plaintiff's motion to compel defendant Albert Weingarten to turn over and disclose those assets. When defendant failed to do so, plaintiff filed a lawsuit the next month in superior court alleging fraud or nondisclosure. Eventually, the case went to mediation.

At a January 24, 2012 status conference, the parties acknowledged that they had settled the case on November 4, 2011. The settlement agreement, handwritten by the mediator and signed by defendants and the parties' attorneys, stated at the top "Case is Settled" and contained the following language: "Albert and Mary Weingarten will pay $50,000 to the Estate of Philomena Weingarten. There is no admission of fault—none whatsoever. All estate proceedings claims whatsoever are terminated with prejudice. This suit will be dismissed with prejudice. Full confidentiality only to the extent possible due to court procedure." The parties reported at the January 24 status conference that after the agreement was signed they disagreed about the scope of the release. When defendants' attorney mentioned that in an exchange of emails the mediator had indicated that he concurred with defendants' position on the scope of the release, plaintiff's attorney objected that those communications were confidential and privileged. Defendants' attorney stated his clients' position on the status of the agreement as follows:

On November 4th they wanted this done and they signed an agreement thinking it was done. Everybody left pleased that it was done. Within a week it was clear that it was not done because there was a dramatically different interpretation and they finally said forget it, it's not done, we just need a trial date.

Reasoning that the parties had settled the case and that any dispute over the scope of the release would be resolved later if necessary, the court stated that in thirty days the case would be marked as dismissed with prejudice based on the settlement agreement unless the parties filed motions within that time period disputing that fact.

On February 21, 2012, plaintiff filed a motion to enforce the settlement agreement. The following day, defendants' attorney filed a motion to withdraw. On April 18, 2012, defendants' new attorney filed a motion to set aside the settlement agreement. One week later, plaintiff filed several motions in response, including a motion to seal and strike defendants' motion, arguing that the communications defendants sought to introduce in support of their motion were confidential and privileged under the Uniform Mediation Act, 12 V.S.A. §§ 5711-5723. One day later, on April 26, 2012, the superior court granted plaintiff's motion to seal and strike, concluding that the motion and accompanying documents contained confidential and privileged communications. The court stated that it would "seal the motion and accompanying documents, to prohibit them from being requested as a public record," but also ordered the court clerk to set a hearing on all concurrent motions, including the motion to set aside the settlement agreement.

On May 14, 2012, defendants filed a reply to plaintiff's motion to seal and strike defendants' motion to set aside the agreement. A hearing on pending motions was held on August 15, 2012. At the hearing, the parties debated the meaning of the disputed release provision and whether the emails proffered by defendants in support of their motion to set aside the agreement were privileged. Defendants argued that once a disagreement arose over the release language, "the contract was no longer enforceable." At that point, plaintiff conceded that defendants' interpretation of the scope of the release was correct. The superior court stated that it would put in writing the conceded limited scope of the release. The court further stated that it considered the matter settled but would accept any evidence that defendants wanted to submit to show otherwise. Defendants' attorney initially appeared to accept the court's decision but at the end of the hearing argued that the settlement agreement was invalid as the result of the dispute reflected in the post-mediation communications and that the disagreement evidenced in those communications was not reconciled within a reasonable period of time. The court indicated that it would deny defendants' motion to set aside the settlement agreement. Two days later, the court issued an entry order stating that, in light of plaintiff's concession that defendants' restrictive interpretation of the release language was correct, the settlement agreement is "otherwise enforceable."

Defendants appeal that order enforcing the settlement agreement, arguing that the superior court erred in concluding that the settlement agreement was enforceable, given that there was no meeting of the minds between the parties regarding an essential provision of the agreement—the scope of the release—at the time the parties signed the agreement.[*] While their

_____

[*] In their reply brief, defendants for the first time cite other "ambiguities" in the settlement agreement, including the absence of the date of the settlement and a date for paying the $50,000, and no explanations for the meaning of the word "claims" or the last sentence in the

2

appeal was pending, defendants also asked this Court to vacate the superior court's order sealing their motion to set aside the settlement agreement, which allegedly contained privileged communications. We agreed to consider that motion along with the merits of the appeal.

Upon review of the record, we concur with the superior court that the parties entered into an enforceable settlement agreement. It is well-established that settlement agreements are governed by contract law. Rogers v. Rogers, 135 Vt. 111, 112 (1977); see Cheverie v. Geisser, 783 So. 2d 1115, 1118 (Fla. Dist. Ct. App. 2001) ("Settlement agreements are interpreted and governed by contract law."). Although the law favors settlement agreements, it is a basic tenet of contract law that, for a contract to be effective as a legal document, "there must be mutual manifestations of assent or a 'meeting of the minds' on all essential particulars" at the point of agreement. Evans v. Forte, 135 Vt. 306, 309 (1977); see Quenneville v. Buttolph, 2003 VT 82, ¶ 16, 175 Vt. 444 ("[W]hile a binding agreement need not contain each and every contractual term, it must contain all of the material and essential terms."); Starr Farm Beach Campowners Ass'n v. Boylan, 174 Vt. 503, 505 (2002) (mem.) ("An enforceable contract must demonstrate a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other."); Vaughan v. Tetzlaff, 141 Vt. 150, 154 (1982) ("The time for measuring a 'meeting of the minds' is the point of agreement, not performance.").

Nevertheless, a contract is not necessarily unenforceable for lack of a "meeting of the minds" simply because the parties to the contract had differing interpretations of what a particular contract provision meant, even if the disputed provision is later deemed ambiguous and subject to court review to resolve that ambiguity.

In this case, the parties signed a written settlement agreement that set forth the essential terms of the agreement—defendants were to give the estate $50,000 with no admission of fault in exchange for dismissal of the lawsuit and an end to claims and proceedings involving the estate. See Sisters & Brothers Inv. Grp. v. Vt. Nat'l Bank, 172 Vt. 539, 543 (2001) (mem.) (rejecting no-meeting-of-the-minds argument where it was undisputed that "each party assented to the same written contract" and party seeking to set aside purchase-and-sale agreement intended to be bound by the contract "although he may have expressed an interpretation of the contract different from" other party); cf. Lavigne v. Green, 23 P.3d 515, 517, 520 (Wash. Ct. App. 2001) (concluding that there was genuine issue of fact as to whether absence of any contract terms other than agreement to settle case for $100,000 made the agreement unenforceable). There was a later disagreement between the parties as to the scope of the release effectuated by the agreement, although the court ultimately did not need to resolve that disagreement because plaintiff eventually conceded that defendants' interpretation of the provision was correct. Even if plaintiff did not make this concession, however, the dispute over the scope of the release reflected in the written and signed agreement did not signal the absence of a contract, or insufficient meeting of the minds to bind the parties to their written agreement. The court could have resolved any ambiguity in the meaning of the agreement without declaring that the

---

agreement. We decline to consider these arguments, which were raised for the first time in defendants' reply brief, see Bigelow v. Dep't of Taxes, 163 Vt. 33, 37 (1994) (stating that "issues not briefed in the appellant's or the appellee's original briefs may not be raised for the first time in a reply brief"). In any event, the absence of these dates and explanations do not demonstrate the lack of a meeting of the minds so as to make the agreement unenforceable, as explained in our discussion above.

agreement lacked the essential terms of an enforceable agreement.  We accordingly affirm the trial court's order enforcing the settlement agreement.

This brings us to defendants' motion filed during the pendency of this appeal to vacate the superior court's order regarding plaintiff's motion to seal and strike defendants' motion to set aside the settlement agreement.  In an April 26, 2012 order, the superior court determined that post-settlement email communications between the parties and mediator cited in defendants' motion to set aside the settlement agreement were privileged from disclosure under 12 V.S.A. § 5715(a) ("A mediation communication is privileged and is not subject to discovery or admissible in evidence in a proceeding.") and 1 V.S.A. § 317(c)(4) (exempting from public disclosure records that are privileged under statutory or common law)  Defendants argue that we cannot resolve the merits of this appeal without deciding whether the email communications are in fact privileged and therefore inadmissible under § 5715(a),  given  their contention that the emails support their argument that there was no meeting of the minds as to the scope of the release at the time the parties signed the settlement agreement.  We disagree.  There is no proffer from defendants other than that the emails will show that shortly after the agreement was signed defendants and plaintiff expressed a fundamental disagreement as to the scope of the release. Defendants' previous attorney had also stated that in the email exchanges the mediator agreed with defendants' position on the scope of the release.

Accepting these facts as true does not change our analysis.  We know that the parties had different interpretations of the scope of the release.  Nevertheless, the parties acknowledged that they intended to settle the case by signing a written agreement that contained all of the essential terms of the settlement.  Indeed, the mediator himself handwrote the agreement expressly stating that the parties had settled.  The fact that at the time of the agreement the parties may have had divergent ideas about the scope of the release reflected in the agreement does not demonstrate that the agreement is unenforceable.  If the parties had persisted in their disagreement over the scope of the release, the emails may have been relevant to resolve any ambiguity in the disputed provision.  Because we conclude that the emails are not, in any event, relevant to the outcome of this appeal, we decline to address defendants' motion..

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice

4